IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARY ALTIZER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case Number CIV-07-420-C |
| | ) | |
| EPWORTH UNITED METHODIST | ) | |
| CHURCH OF CHICKASHA, | ) | |
| OKLAHOMA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Plaintiff filed the present action following her termination of employment with Defendant.  Although the allegations in Plaintiff's Complaint are less than clear, it appears she bases her claim on an alleged violation of 42 U.S.C. § 2000e, asserting she was treated unfairly due to her gender.  Plaintiff was hired as the Director of Christian Education in July of 2005.  After her employment began, Plaintiff also became the director of the day school.  Plaintiff was not offered additional pay for the additional duties.  According to Plaintiff, she was forced to resign in April of 2006.  Plaintiff then filed the present action asserting claims for (1) gender discrimination by failing to pay her a salary commensurate with that of male employees; (2) gender discrimination by the existence of a hostile work environment; (3) retaliation for engaging in activity protected pursuant to Title VII; and (4) wrongful termination in violation of Oklahoma's public policy.

Defendant filed the present motion asserting the undisputed facts establish that it is entitled to judgment on Plaintiff's claims.  Plaintiff contests Defendant's position, asserting there are facts in dispute.[1]

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977).  The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant.  Fed. R. Civ. P. 56(e).  These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c),

---

[1] The Court notes that its task of considering this motion has been made substantially more difficult by the parties' failure to follow the applicable local rules.  As LCVR 56.1(b) makes clear, Defendant's brief is required to begin with a statement of the material facts that are not in dispute – not an introductory paragraph arguing the merits of the case.  Paragraph (c) of the same rule requires Plaintiff's response brief to state the paragraph number of Defendant's list of undisputed facts which Plaintiff asserts is in dispute.  A comparison of the two briefs establishes that Plaintiff does not dispute many of Defendant's proffered undisputed facts.  Yet this is only evident as a result of a painstaking comparison.  Counsel are directed to review the local rules and familiarize themselves with the requirements therein.

except the mere pleadings themselves." Celotex, 477 U.S. at 324.  Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits.  Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992).  "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998).  All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

1.  Unequal Pay

Plaintiff asserts that she was paid less than similarly situated males because of her gender.  According to Plaintiff, she was paid less than the youth director, music director, finance manager, and custodian, all of whom were male employees.  Plaintiff also notes that following her termination, a director of Christian education was hired at a salary of $23,000 per year, and a director for the day school was hired at a salary of $22,098 per year.  Plaintiff notes that she did both jobs for only slightly more money.

Defendant argues that Plaintiff's claim is untimely under the standard established by Ledbetter v. Goodyear Tire & Rubber Co., --- U.S. ---, 127 S.Ct. 2162 (2007).  Defendant asserts that Plaintiff was aware of the alleged pay disparity in September of 2005 but did not file her EEOC claim until August of 2006.  Plaintiff argues that because she has direct evidence of pay discrimination, her case is distinguishable from Ledbetter.  Further, Plaintiff states her

action is timely as the date on her EEOC intake questionnaire is incorrect in that it was, in fact, prepared on June 29, 2006.

The Supreme Court's decision in <u>Ledbetter</u> clarified when the EEOC charging period begins. "The EEOC charging period is triggered when a discrete unlawful practice takes place. A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination." <u>Ledbetter</u>, 127 S.Ct. at 2169. Thus, in a case such as this, where Plaintiff's claim is premised on pay disparity, her claim was ripe when the decision to pay her less was made. <u>Id.</u> at 2165 ("Because a pay-setting decision is a 'discrete act,' it follows that the period for filing an EEOC charge begins when the act occurs."). Plaintiff's attempts to distinguish <u>Ledbetter</u> are unavailing as they ignore this central premise of <u>Ledbetter</u> and <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 114 (2002). Plaintiff argues that in any event her EEOC claim was timely as it was prepared on June 29, 2006, the same date she retained her counsel. However, Plaintiff has failed to offer any evidentiary support for this claim. The exhibit referenced in her brief is simply the contract between Plaintiff and her attorney. It makes no reference to the EEOC pre-charge questionnaire. Moreover, the key inquiry is when the charge was **filed** with the EEOC, not when a questionnaire was filled out. <u>See</u> <u>Montes v. Vail Clinic, Inc.</u>, 497 F.3d 1160, 1163 (10th Cir. 2007) ("An employee wishing to challenge an employment practice under Title VII must first 'file' a 'charge' of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e)(1).") (citation omitted). The evidentiary materials supplied by Plaintiff suggest that at the earliest, the EEOC received information on July 5, 2006. However,

4

as shown by Plaintiff's Ex. 10, that information was insufficient for the EEOC to draft a charge of discrimination.  Thus, the letter on which Plaintiff relies cannot constitute a charge.  See Montes, 497 F.3d at 1166:

> Taking the most permissive standard applied by courts for determining whether submission of a questionnaire with a state entity constitutes a "charge" under Title VII, a plaintiff's state filing must satisfy the charge "content" regulations promulgated by the EEOC.  See, e.g., Casavantes [v. Cal. State. Univ., Sacramento], 732 F.2d [1441] at 1443 [(9th Cir. 1984)].  The applicable EEOC regulations, in turn, require "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  See 29 C.F.R. § 1601.12(b).

Consequently, the date on which the charge was filed must be considered to be August 18, 2006.  Plaintiff's testimony was that she discovered the alleged improper pay disparity in late September of 2005.  Giving Plaintiff the benefit of the doubt, her claim then accrued no later than October 1, 2005.  Three hundred days from October 1, 2005, is July 27, 2006.  Plaintiff's claim is therefore untimely.

Even were the Court to find Plaintiff's claim timely, it would still fail.  Plaintiff identifies four employees who she asserts were similarly situated to her yet who were paid substantially more.  However, upon examination, the evidence offered by Plaintiff fails to support her position.  First, the custodian actually received less salary than Plaintiff.  While his total compensation was greater, it appears to be primarily due to increased insurance costs.  Plaintiff offers no evidence that her insurance needs were similar to the custodian's.  Plaintiff also notes the finance director made more money.  However, Plaintiff offers no evidence demonstrating that the finance director was similarly situated to her.  As for the youth and music ministers, the job descriptions offered by Plaintiff demonstrate substantial differences in the responsibilities

5

of these positions and Plaintiff's.   Moreover, Plaintiff has offered no evidence to refute

Defendant's position that the youth and music ministers were paid more because they had been

employed by Defendant for a substantially longer period of time.   Indeed, Plaintiff is in a

position substantially similar to the plaintiff in Amro v. Boeing Co., 232 F.3d 790 (10th Cir.

2000).   Analyzing the evidence presented by plaintiff in that case, the Circuit stated:

> After carefully reviewing the record, we agree with the district court that
> "although [Mr. Amro] has identified others who allegedly are similarly situated
> engineers, he has not provided any evidence of their performance, training,
> education or skills.  [Mr. Amro's] own opinion that his performance is excellent
> does not raise a fact question as to how his performance compares to others."
> Amro, 65 F.Supp.2d at 1186; see also Jones v. Denver Post Corp., 203 F.3d 748,
> 754 (10th Cir. 2000) ("'It is the manager's perception of the employee's
> performance that is relevant, not plaintiff's subjective evaluation of his own
> relative performance.'") (quoting Furr v. Seagate Tech., Inc., 82 F.3d 980, 988
> (10th Cir. 1996)).  In essence, Mr. Amro alleges "[t]he simple fact that [he] did
> not receive as high a raise as [he] feels he is worth." Murphy v. Yellow Freight
> Sys., Inc., 832 F.Supp. 1543, 1550 (N.D. Ga. 1993).  That is insufficient.

Amro, 232 F.3d at 798 (footnote omitted).

Even more compelling is Plaintiff's lack of evidence demonstrating her pay was the

result of racial discrimination.  "Title VII does not make unexplained differences in treatment

per se illegal nor does it make inconsistent or irrational employment practices illegal.  It

prohibits only intentional discrimination based upon an employee's protected class

characteristics." E.E.O.C. v. Flasher Co., Inc., 986 F.2d 1312, 1319 (10th Cir. 1992).[2]  In short,

Plaintiff's attempt to demonstrate Defendant's non-discriminatory reason is mere pretext fails

as it is supported by nothing more than Plaintiff's conclusory allegations.  Salguero v. City of

---

[2] Although some of the reasoning in Flasher has been questioned, the requirement to show
racial discrimination as the reason behind alleged adverse action remains good law.

<u>Clovis</u>, 366 F.3d 1168, 1178 (10th Cir. 2004) ("[C]onclusory allegations–lacking evidentiary support in the record–do not suffice to create a genuine question as to whether the City's work-related reasons for Salguero's termination were a pretext for discrimination.").

As Defendant notes, when asked at her deposition what evidence she had that she was paid less because she was a woman, Plaintiff had no evidence – just her belief.  <u>See</u> Dkt. No. 16, Ex. A, p. 48, ll. 11 - p. 49 ll. 11:

> Q.   So you believe that the Staff Parish Relations Committee, as a committee, met and made a conscious choice to pay you less money because you were a female.

> A.  No.  I don't believe they did that, no.

> Q.  Well, you've claimed pay disparity discrimination based upon gender. Your salary is set by committee, so I need to find out what evidence you have that this committee has discriminated against you based upon the fact that you're a female.

> A.  Oh, I see.  I don't believe, again, that they found it important to pay a woman a salary that was comparable to her education and her training.

> Q.  But isn't it true that this is an assumption that you are making based upon your total compensation package when you started compared to that of the two other directors with five years of experience?

> A.  Is it an assumption? I guess I would have to call it that.  I can't think of anything else to call it.

> Q.  And you have no specific evidence that the pay difference between you and the other directors is related to your gender.  That is just your belief?

> A.  It is - - it is the belief that I began to develop after I heard people in the church talk.

When pressed to identify a person she had overheard, Plaintiff could not come up with a single name.  Plaintiff also admitted she would have no documentary evidence to support her claim.

Thus, Plaintiff's testimony makes clear that her claim for pay disparity as a result of her gender is based solely on her beliefs and assumptions. Such a foundation is inadequate as a matter of law. See Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004) ("To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."). Finally, the Court finds no reasonable jury could rely on the evidence that Plaintiff was replaced by two people, each paid only slightly less than Plaintiff, as evidence of gender discrimination when both replacements were female.

2.  Harassment

Plaintiff claims she was subjected to harassment because of her gender. According to Plaintiff, she was threatened and verbally harassed by her supervisor, the youth director, members of the church, and parents of students of the day school. Once again, Plaintiff has failed to offer any evidence to support her claims. The only exhibits provided by Plaintiff that even remotely suggest gender-based harassment are her EEOC questionnaire and her answers to Defendant's interrogatories. However, neither document offers any basis from which a reasonable jury could find that any harassment of Plaintiff was due to her gender. In her deposition, Plaintiff testified that the harassment consisted of being yelled at by various people. Plaintiff further testified that she was yelled at because the church members and staff were angry with her. When asked why she believed that constituted gender-based discrimination, Plaintiff testified that although she had no hard evidence she just knew that if she had been a male the harassment would not have occurred. As noted above, speculation, conjecture, or

surmise is insufficient to defeat a summary judgment motion.  Bones, 366 F.3d at 875.  Thus,

Defendant is entitled to judgment on this issue.

3.  Retaliation

In her response brief, Plaintiff argues her termination was in retaliation for engaging in

protected activity.  According to Plaintiff, she was fired because she was receiving extra pay

to offset the pay disparity caused due to her gender and/or because of her actions taken in

response to the harassment.[3]

"In order to establish a prima facie case of retaliation, [Plaintiff] must show (1) she

engaged in protected opposition to discrimination; (2) [Defendant] took an adverse employment

action against her; and (3) a causal connection between the protected activity and the adverse

action."  Dick v. Phone Directories Co., Inc., 397 F.3d 1256, 1267 (10th Cir. 2005) (citing

Jeffries v. Kansas, 147 F.3d 1220, 1231 (10th Cir. 1998)).  Plaintiff has failed to offer evidence

to demonstrate a question of fact as to the first element.  While it is not necessary that Plaintiff

prove she suffered from discrimination, id., there must be some evidence that the alleged

retaliator acted in retaliation because that person knew Plaintiff believed she had been subjected

to discrimination and had taken action in opposition thereto.  Defendant has offered evidence

of the reasons behind Plaintiff's termination and established an absence of material fact that

those reasons were not in retaliation or in any way based on any action that could be considered

protected activity.  See Petersen v. Utah Dep't of Corrections, 301 F.3d 1182, 1189 (10th Cir.

---

[3]  As Defendant notes in its reply, these reasons are completely different from Plaintiff's deposition testimony where she testified that she was terminated because she had terminated a favorite school teacher.

2002) ("As a result, retaliation against Petersen would be prohibited by § 2000e-3(a) only if the superior retaliating against her knew that her opposition to Tansy's treatment of Mooney was motivated by a belief that he was engaging in racial or religious discrimination."). Plaintiff has failed to offer anything other than the conclusory arguments of counsel in support of her position. Even if they had some evidentiary value, those arguments would be insufficient, as they fail to offer any basis to find the alleged retaliator was aware Plaintiff believed she was engaged in protected activity.

4.  State Law Claim

Plaintiff argues that her termination violated Oklahoma's public policy and that therefore she should be permitted to pursue a claim pursuant to Burk v. K-Mart, 1989 OK 22, 770 P.2d 24. According to Plaintiff, one of the reasons for her termination was that she hired an off-duty police officer to protect her employees and the children in the day school. Although Plaintiff suggests she also was fired for objecting to the harassment she and other employees at the school were subjected to, Plaintiff fails to identify an Oklahoma public policy on this issue. In support of her argument, Plaintiff notes the Oklahoma Childcare Licensing Facilities Act, 10 Okla. Stat. §§ 401 et seq., requires actions to be taken to ensure the care and protection of children at the school.

Whether or not the statute referenced by Plaintiff is sufficient to establish an actionable public policy is a question of law. See Pearson v. Hope Lumber & Supply Co., Inc., 1991 OK 112, ¶ 4, 820 P.2d 443, 444, citing Hargrave v. Canadian Valley Elec. Coop., 1990 OK 43 792 P.2d 50, 59. After review, the Court finds the Act cannot establish a public policy as it does not

touch on any aspect of the employment relationship.  Id. at ¶ 7, 445.  Thus, Plaintiff's Burk claim must fail, as she has failed to identify a public policy.  See McCrady v. Okla. Dep't of Public Safety, 2005 OK 67, ¶ 9, 122 P.3d 473, 475 ("In order to prevail in an action brought for a wrongful discharge in violation of Oklahoma's public policy, a plaintiff must first identify an Oklahoma public policy goal that is clear and compelling and articulated in existing constitutional, statutory or jurisprudential law.").  Accordingly, Defendant is entitled to judgment on this claim.

## CONCLUSION

For the reasons set forth herein, the Court finds the undisputed material facts demonstrate that Defendant is entitled to judgment on Plaintiff's claims.  Accordingly, Defendant's Motion for Summary Judgment (Dkt. No. 16) is GRANTED.  A separate judgment will issue.

IT IS SO ORDERED this 7th day of December, 2007.


ROBIN J. CAUTHRON
United States District Judge